M. & P. Hutchins *v*. Sayles Hawley & William N. Peck, <span style="float:right">Washington, March, 1837.</span>
    Trustees of J. & M. Greenough.

Where H. executed a note to G., which G. sold to P. and received the amount, of which P. immediately gave notice to H.: Held, that H. could not be held as the trustee of G., on the ground that the sale of the note to P. was done with the intent to enable G. to abscond, and thereby defraud his creditors. The question of fraud cannot be tried between two trustees upon their own disclosure : and there is no provision for trying such question by the trustee by jury. Also held, that, to constitute one trustee of another, he must be indebted or hold property in trust, and as neither H. nor P. were indebted to G., nor was the note, or the amount due them, holden for his benefit in any way, they could not be adjudged his trustees.

The plaintiffs were creditors of the Greenoughs, and, as such, brought this suit. On the trial in the County Court, it appeared that Hawley had made his note to the Greenoughs, and that, before the commencement of this suit, they had, for a valuable consideration, assigned it to Peck, and with a full knowledge on the part of the latter, that they intended to abscond and leave their debts unpaid, and that they made the assignment to obtain money, for that purpose. Peck, however, had no knowledge of this particular debt. Upon these facts, the County Court adjudged that Hawley and Peck were, neither of them, trustees.— Plaintiffs excepted, and the case passed to this court, for revision.

*L. B. Peck for the plaintiffs.*

The sale of the note, although made on good consideration, was not made *bona fide.* The assignee, at the time of the purchase, had full knowledge that the assignors were about absconding to evade the payment of their debts, and wished to raise the money on the note, to aid them in their flight. The direct effect of the assignee's conduct was to defeat creditors. It not only placed the note in question beyond their reach, if the sale is allowed to stand, but it enabled the debtors to withdraw their persons from the reach of process. It would be monstrous, under such circumstances, to support a contract, so palpably injurious to creditors. Cowp. 434. 1 Burr. 474. 4 Doug. 86. 1 Swift's Digest 86. *Edgell* v. *Lowell et al.* 4 Vt. Reports, 405.

That the note was a mere *chose in action*, and not liable to be seized on mesne or final process, does not alter the case. Our statute against fraudulent sales extends to, and makes *void,* a

Washington,
March,
1837.

Hutchins
v.
Hawley et al.

fraudulent assignment of a *chose in action*, as well as a sale of any other species of property, made to defeat creditors. This subject has frequently been before the courts in the neighboring States, and whenever the assignment has been proved fraudulent, as against creditors, the trustee has invariably been held liable to the creditor, in this form of action. 4 Mass. Rep. 508. 13 id. 215. 16 id. 318. 4 Pick. 503. 9 id. 435. 3 Conn. Rep. 27. 4 N. H. Rep. 469. 5 Johns. Rep. 239.

*A. Spaulding, for defendants.*

Was the notice sufficient ?

Upon this point there can be no doubt. See Rev. statutes 144.

A creditor cannot, in legal contemplation, be defrauded by the *mere* conveyance by his debtor of property, which, by law, is exempt from attachment. 1. Fairfield's Rep. 161.

A mere possibility of an injury is too remote a ground of action. 1 Swift's Dig. 284.

Private papers and account books are not goods and chattels, which are liable to be attached or sold on execution. 12 Mass. Rep. 506.

Choses in action are not liable to execution, either in law or equity. *Donovon* v. *Finn,* 1 Hop. 79.

The fact, that Peck knew the principal debtors intended to abscond, can make no difference in this case. The note could not be reached by any process at the *time* of the purchase. There is no pretence, but that the defendant paid a fair and full consideration for the note. The principal debtors, then, were in a better condition to pay their honest debts, *after* the sale, than they were before.

It will not do to say that the creditors of the Greenoughs might have brought a suit against them and have committed them to jail,—and, in this way, have wrested the avails of the notes from them. It will be seen, at once, that here is a mere possibility of an injury. On the same principle, the creditor might have obtained the purchase money given for the note.

If A. with a view to defraud his creditors, convey goods to B.—but B. *bona fide*, pays or assumes to pay, on account of the goods, debts of A. to the full value of the goods, B. cannot, afterwards, be charged as the trustee of A. 4 New Hampshire Rep. 469.

Where one, who was summoned as trustee, had received goods of the principal debtor, under a fraudulent contract, but, before

Washington,
March,
1837.

Hutchins,
v.
Hawley et al.

the service of the process upon him, had paid the debts of the principal debtor to the amount of the value of the goods received, he was entitled to be discharged. 12 Mass. Rep. 140.

The Greenoughs could not have maintained an action against Peck to recover the note back;—therefore, Peck cannot be adjudged a trustee. 2 N. H. Rep. 93. id. 374. id. 439.

Negotiable promissory notes are not capable of being seized and sold on execution. One possessed of such, belonging to a debtor, is not, in virtue thereof, liable as a trustee of such debtor. 7 Mass. Rep. 438. 9 id. 537.

The opinion of the court was delivered by

Williams, Ch. J.—It appears that Hawley executed a note to the Greenoughs, which is unpaid. That, before the commencement of this suit, Peck had purchased the note of the Greenoughs, paid them the value thereof, and notified Hawley of the purchase. The plaintiff endeavors, in this suit, to hold Hawley as trustee of the Greenoughs, on the ground that the purchase, by Peck, of the note, was fraudulent and done with an intent to enable the Greenoughs to defraud their creditors. If it is practicable to effect this object in this action, it will follow, that questions in relation to a fraudulent conveyance may be decided by the court, without the intervention of a jury. Nothing is disclosed shewing that Peck is in any way indebted to the Greenoughs. He has paid the value of the note, and the only object of making him a party is to obtain from him a disclosure, which may be evidence of a fraudulent transaction between him and the Greenoughs, and in order that the decision in this case may be conclusive upon his right hereafter to collect the note of Hawley. In Massachusetts it has been considered that this course may be taken. The impropriety, however, of thus passing upon the right of the assignee, without the intervention of a jury, led the court in that State to suggest that a legislative provision for a trial, by jury, of the question, whether trustee or not, would be highly expedient. The greater impropriety, however, of compelling a trustee to be examined on oath, in relation to fraud in a conveyance, or assignment, to which he was a party, when, by his answer to the interrogatories, he might subject himself to the penalty, provided in the statute against fraudulent conveyances, would lead us to hesitate, before we should say that any such proceedings ought to be sanctioned.

Washington,
March,
1837.

Hutchins
v.
Hawley et al.

The design of the statute was to subject property, *in action*, to be taken by the creditors of an absconding or concealed debtor, as property in possession is subject to be taken by the creditors of every debtor; and the statute evidently was not designed to try a question of fraud in the dealings between a debtor and his assignees. The creditor is placed in the situation of the absconding or concealed debtor, so far as to enable him to collect the money, goods, chattels, rights or credits of such debtor in the hands of his debtor. It was said by the very able and learned judge, who delivered the opinion of the court, in the case of *Sargeant v. Leland*, 2 Vt. Rep. 280, " that by money, " rights or credits, is meant cash in the hands of the trustee, or " debts due from him, belonging to the principal debtor;" and it is very obvious, that there must be some trust, or indebtedness, as between the debtor and the trustees, before such trustees can be made liable by the process contemplated in this act. Whether the trust must be such as could be enforced, or whether, in the case of a fraudulent trust, which should appear from proper testimony, and which could not be enforced between the parties, because they were both in *pari delicto*, the creditors could avail themselves of the provisions of this statute, is not a question arising in this case. In the case before us, there was neither trust nor indebtedness. Neither Peck nor Hawley had any property in trust for, nor were they indebted to the Greenoughs. The note of Hawley was transferred to Peck, and notice regularly given. Hawley ceased, after such notice, to be the debtor of the Greenoughs. Peck purchased the note, paid the full value, and held it for his own benefit, and not in trust for the absconding debtor. If the purchase was made *mala fide*, the remedy of the creditors must be sought in some other action, and not in this. At the time the note was received, by no process could the creditors of the Greenoughs have appropriated the avails of it in satisfaction of their debts. In the view which the plaintiff takes of the transaction, it was only a consequence of the purchase that the Greenoughs were enabled to abscond. We are very clear that the plaintiff cannot, from the disclosures made by the persons summoned as trustees, hold them accountable as such for the amount of the note in question. The judgment of the county court is therefore affirmed.